UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

DONALD J. JOHNSON,                         )
                                           )
                  Plaintiff,               )
                                           )          1:10-cv-1359-SEB-DKL
         vs.                               )
                                           )
MICHAEL J. ASTRUE, Commissioner of         )
the Social Security Administration,        )

                  Defendant.

**ENTRY**

         This is an appeal from a final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying Plaintiff Donald Johnson's claim for a period of

disability and disability insurance benefits (DIB) under Title II of the Social Security Act

("the Act").  Mr. Johnson asserts that the decision denying him such benefits was not

supported by substantial evidence and requests that the Court remand the case to the

Commissioner.  For the reasons detailed herein, we deny his request and affirm the decision

of the Commissioner**.**

**I.  Applicable Law and Standard of Review**

         In order to be eligible for DIB, a claimant must establish disability.  The Act defines

disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The claimant's impairment "must result from anatomical, physiological, or psychological abnormalities" which can be demonstrated using "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. The impairment "must be established by medical evidence," not merely by the claimant's statements about his symptoms. *Id.* Further, the claimant must show that his impairment is so severe that he is not only unable to do any of his previous work "but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration uses a "five-step sequential evaluation process" to determine disability. 20 C.F.R. § 404.1520(a)(1). The five steps must be evaluated in sequence; if disability status can be determined at any step in the sequence, the application will not be reviewed further. *Id.* § 404.1520(a)(4). At the first step, if the claimant is currently engaged in any substantial gainful activity, then he is not disabled. At the second step, if the impairment is not severe, then he is not disabled. A severe impairment "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.924(c). At the third step, if the claimant's impairments or combination of impairments meet or equal the criteria of any of the conditions included in

the Listing of Impairments, 20 C.F.R. § 404, Subpart P, Appendix 1, then the claimant is disabled. The Listing of Impairments sets forth medical conditions that the Social Security Administration has deemed *per se* disabling. *Id.* § 404.1525(a). If the claimant's impairments do not satisfy a listing,[1] then the claimant's residual functional capacity (RFC) will be determined at the fourth and fifth steps of the evaluation process. The RFC is an assessment of the claimant's ability to work on a regular, continuing basis despite his impairment-related physical and mental limitations. *Id.* §§ 404.1545, 416.945. At the fourth step, if the claimant's RFC permits him to perform his past relevant work, then he is not disabled. *Id.* § 404.1520(a)(4). Lastly, at the fifth step, if the claimant is able to perform any other work in the relevant economy, then he is not disabled. *Id.* The fifth step requires consideration of the claimant's RFC as well as his age, work experience, and education, which are not considered at step four.

For steps one through four of the evaluation process, the claimant bears the burden of proof. The burden then shifts to the Commissioner at step five to show that there are jobs in the relevant economy that the claimant can perform. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). For a claimant with purely exertional limitations,[2] the Commissioner may use the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P,

---

[1]For purposes of the Act, to satisfy a listing, a claimant "must have a medically determinably impairment(s) that satisfies all the criteria in the listing." 20 C.F.R. § 405.1525(d). The "impairment(s) cannot meet the criteria of a listing based only on a diagnosis." *Id.*

[2]Exertional limitations are those which only affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 1569a(b).

Appendix 2 (the "grids") to make a disability determination. The grids correlate the claimant's age, work experience, education, and RFC with a finding of "disabled" or "not-disabled." 20 C.F.R. §§ 404.1569, 404.1569a. If a claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used at this step. Instead, a vocational expert must testify regarding the number of existing jobs for a person with the claimant's particular medical conditions and vocational characteristics. *Id.*; *Haynes v. Barnhart*, 416 F.3d 621, 629 (7th Cir. 2005); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). Results from the grids, however, may serve as advisory guidelines in these cases. 20 C.F.R. § 404.1569.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Our standard of review in a case such as this is deferential; if the Commissioner's decision is supported by substantial evidence in the record, the court must uphold his decision. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This standard requires "more than a mere scintilla," but less than a preponderance, of the evidence. *Id.* at 401; *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). This limited scope of review derives from Congress's intent that the

Commissioner, not the courts, make disability determinations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

## II. Claimant's Background

Mr. Johnson applied for Social Security disability insurance benefits on June 8, 2006, as a result of a cerebrovascular accident (stroke) on March 30, 2006. R. 13, 70-72, 104. At the time of his stroke, Mr. Johnson was employed as a truck driver with Yellow Transportation, Inc. R. 77. At the time of his application for DIB, he was 50 years old, had a tenth grade education, had prior work as a trucker, and a past medical history of an myocardial infarction and stenting in 2003. Upon release from two months of inpatient rehabilitation, in June 2006, he was using a walker due to hemiplegia in his right upper and right lower extremities. Mr. Johnson experienced speech aphasia after the stroke which resolved itself in short course. The right-side hemiplegia did not resolve, however, and, as a result, Mr. Johnson continues to experience diminished use of his upper right and lower right extremities. During the course of the disability evaluation process, Mr. Johnson was sent by the Social Security Administration to consulting physicians for evaluation of his mental and physical symptoms.

The same month that he was discharged from inpatient care, in June 2006, Mr. Johnson was assessed by Dr. Jefferson Qualls, a family practice doctor. R. 218. Dr. Qualls diagnosed Mr. Johnson with hypertension and hyperlipidemia. He noted that Mr. Johnson had weakness in his upper right extremity and lower right extremity, as a result of his stroke.

*Id.* Dr. Qualls also noted that Mr. Johnson had diabetes which was controlled with regular medication. R. 219.

On August 15, 2006, five months following his stroke, Mr. Johnson was assessed by Floyd Robison, Ph.D., to determine the extent of his memory and ability to sustain concentration. Dr. Robison, a psychologist with Liberty Psychological Services, concluded that Mr. Johnson's strengths included: (1) at least low normal intellectual performance; (2) normal performance and grasp of routine personal hygiene, household tasks, community tasks, and interpersonal relationships; and (3) the ability to manage funds without assistance. Dr. Robison found that Mr. Johnson had limitations with regard to his working memory, with a Global Assessment of Functioning (GAF) of 62. R. 245-49.

On August 28, 2006, Kenneth Neville, Ph.D. conducted a psychiatric assessment of Mr. Johnson and determined that Mr. Johnson suffered from an organic mental disorder caused by the after-effects of stroke as well as the affective disorder of depression and adjustment disorder. He determined that Mr. Johnson was able to perform routine household tasks, pay bills, manage finances without assistance, and care for himself, including drive himself to his doctors appointments. No further limitations in mental ability were noted beyond his low working memory scores on the Weschler Memory Scale-III (WMS-III). R. 253-66.

On October 31, 2006, Mr. Johnson was assessed by Joseph Gaddy, M.D., to determine his residual functional capacity (RFC). Dr. Gaddy found Mr. Johnson to have exertional limitations, but could lift twenty pounds occasionally and ten pounds frequently,

coupled with the ability to either sit or stand for approximately six hours in an eight-hour work day. R. 430. Dr. Gaddy noted that Mr. Johnson walked without assistance and that push-pull operation of hand or foot controls was unlimited, concluding that "strength was normal in bilateral upper extremities and lower left extremity." *Id.* Upon reviewing Mr. Johnson's ability to crouch, kneel and crawl, Dr. Gaddy concluded that Mr. Johnson had occasional postural limitations in addition to his exertional limitations and should avoid environmental hazards such as work with heavy equipment; yet, he had no limitations with regard to manipulation, vision, and communication. Dr. Gaddy noted that Mr. Johnson's self-reports of his symptoms were partially credible and thus based his findings on the medical evidence in the record more than on Mr. Johnson's own claims of severity of impairment and functional limitations. R. 423-30.

On March 1, 2007, Mr. Johnson's file was reviewed by B. Randall Horton, Psy.D. and by Fernando R. Montoya, M.D., both of whom confirmed Dr. Neville's August 28, 2006 assessment. R. 431-32. The examinations and conclusions of Dr. Qualls, Dr. Kovacich, and physicians with the Indiana Heart Physicians, dated between October 2009 and May 2010, were not presented to the ALJ, therefore they have not been considered here.[3]

---

[3] Mr. Johnson presents medical evidence in this judicial review that was not available to the ALJ at hearing in 2009. In the social security system, as in a standard judicial system, there is a dispute-resolution procedure for newly discovered evidence. When newly-discovered evidence has not been presented to the trier of fact, the claimant must furnish a reason why justice requires that the trier of fact to reexamine her decision in light of it. The vehicle for such reexamination under federal procedure is Fed.R.Civ.P. 60(b); the social security counterpart is 20 C.F.R.§§ 404.987-404.989, 416.1487-416.1489, which authorizes the filing of petitions to reopen. *Eads v. Sec'y of Health and Human Servs.*, 983 F.2d 817 (7th Cir. 1993) citing *Bolden v. Bowen*, 868 F.2d 916, 917 (7th Cir.1989). No such petition has been filed in this case.

Mr. Johnson's claim for benefits was denied at the initial and reconsideration levels of review; he then filed a request for hearing before an administrative law judge (R. 13, 22-25, 29-31) and this claim was heard by ALJ Michael McGuire ("the ALJ") on April 9, 2009. R. 36.  At the time that Mr. Johnson appeared at his DBI hearing, he was living alone.  R. 445.  The ALJ determined that Mr. Johnson did not meet the disability criteria as defined by the Act and was therefore not entitled to DIB.  R. 13-19.  At step one, Mr. Johnson was determined to be not engaged in substantial gainful employment.  At step two, the ALJ concluded that Mr. Johnson had the following severe impairments:  status post myocardial infarction (MI) with angioplasty and one stent, subsequent to a cerebrovascular accident (CVA) with right-sided residuals and diabetes mellitus.  20 C.F.R. § 404.1517 *et seq.*  The medical evidence was reviewed as to the weakness in Mr. Johnson's extremities and his mental impairment.  The ALJ concluded that the musculoskeletal weakness in his extremities was insufficiently acute to be classified as "severe."  Where normal strength is scored at 5/5, Mr. Johnson scored 4/5 in his right upper extremity, which indicates that movement is possible with some resistance provided by the examiner.  He scored a 3/5 in his right lower extremity, which indicates possible movement against gravity, but not by the examiner.  The ALJ adopted the conclusions of the consultative psychologist indicating that there was no evidence of severe mental impairment.  R. 16.

At step three, the ALJ further concluded that based on the lack of documentation of

"persistent disorganization of motor functions" and the 4/5 and 3/5 strength in his right extremities that Mr. Johnson did not have an impairment or combination of impairments that meets or medically equals one of the Listing of Impairments. Following a review of the entire record, including both Mr. Johnson's severe and non-severe symptoms, his residual functional capacity included the ability to perform light work, as defined under 20 C.F.R. § 404.1567(b): the ability to lift or carry "20 pounds frequently [sic] and 10 pounds occasionally [sic] sit 6 hours, stand/walk 6 hours with sit/stand at will, push/pull 20 pounds, gross manipulation with dominant right upper limited to occasionally, avoid heights and dangerous machinery, no climbing, and occasional posturals."[4] At step four, the ALJ concluded that Mr. Johnson's RFC rendered him unable to perform his past relevant work as a semi-truck driver and, at step five, given Mr. Johnson's RFC in combination with his age, education, and work experience the ALJ found that there were jobs in the economy that Mr. Johnson could perform thus disqualifying him for DIB.

The ALJ's decision became final when the Appeals Council denied Mr. Johnson's request for review on April 17, 2010. R. 1-3. Mr. Johnson now contends that the Commissioner has committed multiple errors in denying his claim for benefits. We discuss these contentions below.

---

[4] The court notes that the ALJ transposed the words "occasionally" and "frequently" in his conclusions in his assessment of RFC. R. 16. This misstatement will be addressed in detail *infra*.

### III. Discussion

Mr. Johnson asserts several challenges to the ALJ's unfavorable decision. He does not challenge the ALJ's decision at step one. At step two of the sequential evaluation, Mr. Johnson claims that the ALJ erred by failing to consider his short term memory loss as a severe impairment or combination of impairments. Mr. Johnson also claims that the ALJ erred by failing to properly evaluate the stroke under the Listing of Impairments. 20 C.F.R. § 404, Subpt. P, App. 1, 11.04. Next, he claims that the ALJ failed to properly assess the magnitude of Mr. Johnson's physical conditions either individually or in combination with his reduced mental capacity symptoms, the result of which, was to increase unfairly Mr. Johnson's residual functional capacity (RFC). Also, Mr. Johnson contends that his own account of his symptoms was inappropriately found to lack credibility. Finally, Mr. Johnson assigns as error the ALJ's assessment at step five that "other work" was available in the national economy that Mr. Johnson could perform because the ALJ failed to include all the physical and mental limitations in the vocational hypotheticals, and relied on vague and misleading vocational witness testimony. We address each of these contentions, in turn, below.

**A. The ALJ's assessment at step two.** Recapping the results of step two of the sequential evaluation, the ALJ found that Mr. Johnson had the following severe impairments: "Status post myocardial infarction (MI) with angioplasty and one stent, subsequent to a cerebrovascular accident (CVA) with right-sided residuals and diabetes mellitus. 20 C.F.R. § 404.1517 *et seq.*" R. 15. The ALJ reviewed the medical evidence for indications of

weakness in Mr. Johnson's extremities and the extent of his mental impairment. The ALJ concluded that neither the musculoskeletal weakness in his right upper extremity of 4/5 nor right lower extremity of 3/5 were sufficiently acute to be classified as "severe." Regarding Mr. Johnson's mental functioning, the ALJ adopted the conclusions of the consultative psychologist which indicated that although there were mild organic and adjustment disorders present, there was no evidence of severe mental impairment. R. 16.

Mr. Johnson claims that the ALJ erred in failing to consider his short term memory loss as a severe impairment. Pl.'s Reply at 1-3. A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521. The claimant bears the burden of proving that his impairment is "severe." *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287 (1987). Furthermore, "[t]he claimant bears the burden of producing medical evidence that supports [his] claims of disability." *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *see* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). Indeed, "[i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Mr. Johnson's evidence does not meet this required standard of proof.

The ALJ found that none of the treating physicians of record had opined that Mr.

Johnson had any specific mental functional limitations resulting from a stroke or otherwise. R. 15-17. Our review of the record confirms the reasonableness of the ALJ's conclusion that Mr. Johnson had failed to produce sufficient evidence of a severe mental impairment and/or any mental functional limitations R. 15-17. None of the treating, examining, or reviewing physicians of record indicated or diagnosed specific mental functional limitations resulting from his stroke or any mental impairment. Mr. Johnson argues that Dr. Robison concluded that his working memory was within the "extremely low" range based on his performance of the Weschler Memory Scale-III (WMS-III) testing (R. 247) and, thus, the ALJ should have also found that he had a severe mental impairment that caused significant work-related functional limitations. We find no objective basis on which to reach this conclusion, however. Pl.'s Br. at 17-20.

Notably, despite having found that Mr. Johnson demonstrated "extremely low" working memory, Dr. Robison nonetheless assessed his Global Assessment of Functioning, or GAF, at 62. A GAF score of 62 is considered "mild" or indicative of the fact that the patient has "some difficulty in social [or] occupational [settings]... but generally functioning pretty well." *DSM-IV* at 34. R. 249. Dr. Robison's GAF score indicating only a mild mental impairment is consistent with the ALJ's finding that Plaintiff did not have a severe mental impairment that imposed significant work-related mental limitations. R. 249. Because Dr. Robison concluded that Mr. Johnson did not evidence any specific mental functional limitations based on his consultative examination findings, (R. 245-49) his opinion was consistent with the functional limitations attributed to Mr. Johnson by the ALJ in his

12

findings. Neither Mr. Johnson's mental condition nor his mild mental symptoms, when considered separately or together with his physical ailments, rises to the level of a severe impairment. Accordingly, Mr. Johnson has failed to establish that he suffers from a severe impairment or a combination of impairments within the meaning of the applicable regulations and the ALJ's determination is supported by substantial evidence.

**B. The ALJ's assessment of impairments under the Listing.** At step three, in order to satify the requirements to show a listed impairment under the Listing of Impairments ("Listing"), the claimant must satisfy all of the criteria of the listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 377 (7th Cir. 1999). The claimant bears the burden of proving that his condition meets or equals such criteria. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *see* 20 C.F.R. § 404.1525(c). Listing 11.04 requires the claimant to demonstrate that he has experienced a central nervous system vascular accident after which, either of the following symptoms is in evidence more than three months later: (A) sensory or motor aphasia resulting in ineffective speech or communication; or (B) significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. 20 C.F.R. § 404, Subpt. P, App. 1, 11.04.

The lack of documentation of any communication problems at any level and the absence of "persistent disorganization of motor functions" in his extremities are reasons cited by the ALJ in support of his conclusion that Mr. Johnson did not have an impairment or combination of impairments that meet the Listing requirements. Mr. Johnson claims that the minimal analysis given his impairments under Listing 11.04 resulted in a failure by the ALJ

to properly evaluate his stroke. Beyond this perfunctory assertion, however, Mr. Johnson fails to cite any evidence in the record which might support his claim that he was given short shrift, and thus prejudiced, by the ALJ's analysis of Listing 11.04, paragraph A. Pl's Br. at 25. In fact, Dr. Gaddy noted that Mr. Johnson had no limitations with regard to manipulation, vision, and communication. R. 430. Additionally, none of the other assessing doctors identified any troubles or limitations experienced by Mr. Johnson with communications. Hence, Mr. Johnson has failed to establish in the record before the ALJ that he has suffered sensory or motor aphasia resulting in communication problems as required to satisfy the Listing requirements. 20 C.F.R. § 404, Subpt. P, App. 1, 11.04, para. A.

Similarly, with regard to any weakness in his extremities, Mr. Johnson points to evidence showing his reduced mobility and limited use of his upper right and lower right extremities. Pl's Br. at 24. Mr. Johnson notes that he is required to use a cane for walking and to maintain balance. However, the record reflects that his level of functioning was only "slightly reduced," to wit, 4/5 motor score of his lower right extremity with no mention of weakness of the upper right extremity. R. 497-98. Dr. Gaddy also reported that Mr. Johnson could walk unassisted. R. 430. There is no evidence that Mr. Johnson suffers gross motor problems in two of his extremities, as required to meet Listing paragraph B. 20 C.F.R. § 404, Subpt. P, App. 1, 11.04., para. B. As a result, we have no basis on which to find that the ALJ erred in his assessment of Mr. Johnson's ailments under the Listing.

**C. The ALJ's assessment of Residual Functional Capacity (RFC).** After reviewing the entire record, including both the severe and non-severe symptoms, the ALJ determined that Mr. Johnson had the residual functional capacity to perform light work, as defined under 20 C.F.R. § 404.1567(b) and the ability to lift or carry "20 pounds frequently [sic] and 10 pounds occasionally [sic] sit 6 hours, stand/walk 6 hours with sit/stand at will, push/pull 20 pounds, gross manipulation with dominant right upper limited to occasionally, avoid heights and dangerous machinery, no climbing, and occasional posturals." R. 16. Mr. Johnson claims that these findings by the ALJ are internally inconsistent, and further that the ALJ erred by failing to properly assess the magnitude of Mr. Johnson's physical impairments, either alone, or in combination with his diminished mental capacity, the effect of which errors was to unfairly inflate Mr. Johnson's RFC. Pl.'s Br. at 20-21.

Specifically, Mr. Johnson asserts that the ALJ confused the terms "occasionally" and "frequently," which prejudicially impacted his conclusion regarding Mr. Johnson's ability to perform light work. With regard to typographical/transcription errors that appear in the administrative record, the court distinguishes between those errors which are harmless and those which affect a disability evaluation. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Mr. Johnson contends that the ALJ's internal linguistic inconsistencies reflect an erroneous understanding of Mr. Johnson's residual functional capacity (RFC) to "lift/carry 20 pounds *frequently*, and 10 pounds *occasionally*" (Emphasis

15

added).  R. 16.  Clearly, this phrase incorporates a typographical/transcription error wherein the ALJ has transposed the terms "frequently" and "occasionally" in this single instance.  In reviewing the significance of that mistake, we must determine whether this transposition of words caused the ALJ to err in deciding Mr. Johnson's RFC.  The transcript of the hearing illuminates our inquiry in this regard.  When the ALJ provided the parameters for the vocational expert's evaluation and opinion, the ALJ correctly stated the applicable physical limitations of lifting and/or carrying twenty pounds *occasionally* and ten pounds *frequently*. These parameters are consistent with the requirements of light work, (R. 452) and they coincide precisely with the definition of light work.[5]  Further, the ALJ's repeated use of the term "light work," appears to have been clearly understood by the vocational expert to mean occasionally carrying a heavy weight and frequently carrying a lighter weight, which line of questioning is consistent with the definition of "light work."  R. 452-54.  Viewed in the context of the record as a whole, we find no basis on which to conclude that this error affected the ALJ's substantive evaluation of Mr. Johnson's ability to perform light work. We find that the ALJ's conclusions are consistent with a claimant who is able to lift no more than twenty pounds at a time, and to frequently carry objects weighing up to ten pounds.  The single misstatement attributing the frequency factor to his carrying twenty pounds is only

_____

[5]  20 CFR § 404.1567(b) *Light work.* "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

that–a misstatement–and nothing more.  20 C.F.R. § 404.1567(b).  Therefore, we conclude that the error was entirely harmless with no negative consequences to Mr. Johnson.

**D.  The ALJ's credibility assessment.**  Related to the issue of RFC but requiring separate consideration is Mr. Johnson's claim that his own account of his symptoms was inappropriately discounted in terms of its credibility by the ALJ.  Mr. Johnson contends that by failing to include discussion of his cognitive issues, by excluding consideration of dependence on a cane for balance, and in overestimating the length of time claimant is able to stand over the course of each day, the ALJ improperly discounted Mr. Johnson's testimony regarding his own condition.  Pl's Br. at 21-22.  The process of judicial review acknowledges that the ALJ is in the best position to assess a witness's honesty.  Thus, credibility determinations are given "special deference" and will be affirmed unless "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  However, the court gives less deference where "the determination rests on 'objective factors or fundamental implausibilities rather than subjective considerations.'" *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872).  The ALJ must provide a basis for his credibility evaluations with specific reasons that are supported by the record.  *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).  He must "build a logical bridge between the evidence" and his conclusion, *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) citing *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

Here, Mr. Johnson assigns as error the ALJ's overstep of his authority to weigh his testimony.  We find no such overstep, however, in the ALJ's analysis.  While Mr. Johnson

characterizes his own conditions as severe, his description of his symptoms was not corroborated by medical evidence. Mr. Johnson discussed at length his short-term memory problems in his testimony; however, the record reflects, and the ALJ so noted, the doctor's assessment recorded as a GAF of 62 does not corroborate Mr. Johnson's view. Similarly, with regard to Mr. Johnson's mobility restrictions in his lower right extremity, he testified that he has "no control" over that area. During the course of the video interview, the ALJ observed Mr. Johnson's walk which evidenced a limp; however, he did not drag the affected leg. On this basis, the ALJ concluded that Mr. Johnson was exaggerating his symptoms. Further, the record does not contain any opinions by any treating, evaluating, or reviewing physicians indicating that Mr. Johnson's ability to walk was any more limited than the ALJ's determination in his RFC finding. Thus, the opinion of the state agency reviewing physicians that Plaintiff was capable of standing and/or walking for about six hours in an eight-hour workday was uncontradicted by any other medical evidence in the record. R. 424, 432.

The ALJ was fully entitled to adopt the uncontradicted opinion of the state agency reviewing physicians relating to Mr. Johnson's short-term memory and his ability to manage himself physically. The ALJ's reliance on the medical record over Mr. Johnson's self reports was well-placed and his analysis well-supported and well-reasoned. Hence, Mr. Johnson's claim that the ALJ's conclusions were mere "conjecture" is wholly unsubstantiated. Pl's Br. at 23. Though Mr. Johnson's subjective accounts differed from the conclusions reached by the ALJ, we find no error in the ALJ's interpretations of or reliance on the evidence before him.

**E. The ALJ's assessment at step five.** At step five, the ALJ considered Mr. Johnson's RFC in combination with his age, education, and work experience, concluding that there were jobs in the economy that Mr. Johnson could perform, thereby disqualifying him for DIB. Mr. Johnson argues that the ALJ erred in his step five assessment to include all the physical and mental limitations in the vocational hypotheticals and relied on vague and insufficient vocational evidence.

At the hearing, once the ALJ poses a hypothetical question to the vocational expert, which includes an accurate description of the claimant's physical and/or mental impairments along with his or her educational level and work history, the stage is set for the vocational expert to offer an opinion and/or findings as to the existence of any jobs in the national economy that such a person can perform productively, and, if so, the claimant will be found not disabled and benefits will be denied. *Moomey v. Apfel*, 3 F. Supp.2d 970, 978 (C.D. Ill. 1998). The proferred hypothetical "'must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record.'" *Dyson v. Massanari*, 149 F. Supp.2d 1018, 1024 (N.D. Ill. 2001) (quoting *Herron v.Shalala,* 19 F.3d 329, 336-37 (7th Cir. 1994)). "When an ALJ poses a hypothetical to a vocational witness based upon an RFC which is based upon incomplete medical evidence and, as a result, the vocational witness testimony is inaccurate [then] the burden is not satisfied." *Williams v. Massanari*, 171 F. Supp.2d 829, 834, see also *Brown v. Chater*, 913 F. Supp. 1210, 1216 (N.D. Ill. 1996) (remanding the case because the hypothetical failed to include pain which was indicated by the medical evidence). Mr. Johnson again asserts that his reduced short-term memory rises

to the level of a severe impairment and, as a result, the ALJ erred in failing to include his low working memory scores in the hypotheticals given to the vocational expert. He contends that without that fact, the hypothetical given to the vocational witness was incomplete. Pl's Br. at 26. As we have discussed at length, Mr. Johnson's ailments were appropriately assessed at each step leading up to the step-five analysis. The analysis employed by the ALJ reflected his previous findings that Mr. Johnson exhibits mild symptoms, which were accurately incorporated by the ALJ in his RFC determination. The administrative record establishes that the ALJ fairly and completely considered the entirety of the medical evidence in light of Mr. Johnson's age, education, work experience and his properly calculated RFC. R. 18. The ALJ also reasonably concluded that the evidence before him did not support a finding of more restrictive functional limitations on the part of Mr. Johnson than those assessed in the RFC finding, freeing the ALJ from needing to include any additional functional limitations in his hypothetical question given to the vocational expert. Although not required, the ALJ did ask the vocational expert to consider a hypothetical circumstance in which the memory of the claimant was severely restricted, (R. 451-456) to which the vocational expert responded that a counter clerk position (DOT # 249.366-010[6]) would be well-suited for a person with Mr. Johnson's physical limitations plus an additional memory impairment.

---

[6] The counter clerk position (DOT # 249.366-010) is consistent with the vocational expert's testimony as well as other attendant positions (DOT # 109.367-010, 299.677-010, 311.677-010, 369.477-014) that are consistent with the symptoms on Mr. Johnson's medical record.

With regard to Mr. Johnson's claim that the testimony of the vocational expert was vague in that it did not specifically list jobs from the current Dictionary of Occupational Titles (DOT), we note that at the hearing the vocational expert's testimony went both uncontradicted and unobjected to. If Mr. Johnson had wished to cross-examine the vocational expert about the specific DOT job numbers or highlight any alleged inconsistencies between his opinion and the DOT, he had a full opportunity to do so, but apparently chose not to pursue those issues. Mr. Johnson's objections to the vocational expert's testimony were forfeited. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("[B]ecause [the claimant's] lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited"); *Hofer v. Astrue*, 588 F. Supp. 2d 952, 966-67 (W.D. Wis. Nov. 17, 2008) ("A lawyer who wants to cross-check the job titles cited by a vocational expert against the descriptions set forth in the [*DOT*] is free to ask the expert to provide the relevant Dictionary citations"). Therefore, we hold that the step five burden has been successfully shouldered by the Commissioner as supported by substantial evidence.

## IV. Conclusion

The Commissioner's decision is without legal error and is therefore **AFFIRMED.**

Date: 03/30/2012

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

**<u>Copies to</u>:**

Annette Lee Rutkowski
KELLER & KELLER
annette@2keller.com


Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov